# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

JOHN LEO EHRHARDT, #296200,  )
                         )
              Petitioner,  )
                         )
v.                            )
                         )
LEROY CARTLEDGE,        )
                         )
            Respondent.  )
_____)

CIVIL ACTION NO. 3:08-2266-CMC-JRM

**REPORT AND RECOMMENDATION**

       Petitioner, John Leo Ehrhardt ("Ehrhardt"), is an inmate with the South Carolina Department of Corrections serving three (3) consecutive sentences of twenty (20) years imprisonment for three charges of criminal sexual conduct with a minor, second degree. On June 16, 2008, Ehrhardt filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c) and (e) (D.S.C). Respondent filed a motion for summary judgment on September 17, 2008. An order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was entered on September 18, 2008. Ehrhardt filed his response to the motion for summary judgment on October 24, 2008. Review of the file revealed that Respondent had not addressed several of Ehrhardt's grounds for relief which were on a handwritten addendum to the petition. Therefore, on March 16, 2009 the undersigned issued an order requiring Respondent to file a Supplemental Return. Ehrhardt filed a motion for default judgment on April 8, 2009. A second Roseboro order was issued on April 16, 2009. Ehrhardt filed

1

a second motion for default judgment and response to the Supplemental Return on May 20, 2009.[1]

## **Background and Procedural History**

Ehrhardt pled guilty on September 11, 2003 to molesting his son in Spartanburg County in late 2002 and early 2003. He was represented by Michael Bartosh, Esquire. Ehrhardt did not file a direct appeal.

Ehrhardt filed an application for post-conviction relief ("PCR") on December 15, 2003. (App. 38). An evidentiary hearing was held on September 20, 2005. Ehrhardt was represented by Paul B. Zion, Esquire. The PCR court issued a written order of dismissal filed May 19, 2006. (App. 135). Counsel filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure on May 30, 2006. (App. 143). The motion was denied by order filed July 3, 2006.

An appeal was filed on Ehrhardt's behalf by way of a Johnson[2] petition. Ehrhardt was represented by the South Carolina Commission on Indigent Defense. The petition raised the following claim:

> The PCR court erred in denying petitioner's allegation that he did not voluntarily and intelligently waive his right to a direct appeal.

(Res.Mem., Ex. 2).

Pursuant to state procedure, Ehrhardt filed a *pro se* brief raising the following issues:

---

[1]Generally, a prisoner may not obtain habeas relief by way of default judgment. Allan v. Perini, 424 F.2d 134 (6th Cir. 1970); Bleitner v. Welborn, 15 F.3d 652 (7th Cir. 1994); and Gordon v. Duran, 895 F.2d 610 (9th Cir. 1990).

[2]Johnson v. State, 364 S.E.2d 201 (S.C. 1988); see also Anders v. California, 386 U.S. 738 (1967).

I.      WHETHER THE LOWER COURT LACKED SUBJECT MATTER JURISDICTION AND ALTERNATIVELY VIOLATED PETITIONER'S RIGHT TO DUE PROCESS WHERE THE INDICTMENT WAS NEVER FILED IN ACCORDANCE WITH THE SUBSTANTIVE LAW OF THE STATE OF SOUTH CAROLINA[?]

II.     DID THE PETITIONER VOLUNTARILY WAIVE TRIAL BY JURY AND ENTER A GUILTY PLEA, WHERE THE TRIAL COURT SPECIFICALLY FOUND THAT THE PETITIONER WAS ENTERING A GUILTY PLEA SOLELY TO AVOID EXTREME EMBARRASSMENT, ... IN EFFECT FINDING THAT THE PETITIONER'S FREE WILL WAS OVERBORNE, NEGATING ANY EXERCISE OF THE RIGHT TO A JURY TRIAL?

III.    THE LOWER COURT LACKED JURISDICTION WHERE DURING THE GUILTY PLEA PROCEEDING, IN RECITING THE FACTS OF THE CASE, THE SOLICITOR FAILED TO SPREAD UPON THE RECORD ANY FACTS SUPPORTING ALLEGATIONS, IN THE INDICTMENT, AS TO THE PLACE WHERE THE OFFENSES OCCURRED. ULTIMATELY, DID THE COURT ERR IN SPECIFICALLY FINDING THAT THERE WAS A SUFFICIENT FACTUAL BASIS FOR COUNT THREE OF THE INDICTMENT TO ACCEPT THE PLEA, WHERE THE SOLICITOR FAILED TO SPREAD UPON THE RECORD ANY FACTS SPECIFICALLY PERTAINING TO THE PLACE OF THE ALLEGED OFFENSE.

IV.     DID THE LOWER COURT LACKED JURISDICTION WHERE PETITIONER TIMELY REQUESTED A PRELIMINARY HEARING, AND THE RECORD IS SILENT WITH REGARD TO ANY WAIVER IN OPEN COURT, BY THE PETITIONER, AND BEFORE THE GRAND JURY HAD ACTED ON THE INDICTMENT?

V.      DID THE LOWER COURT ERR BY FAILING TO FIND THAT PETITIONER'S RIGHTS WERE VIOLATED IN CONTRAVENTION OF THE DOUBLE JEOPARDY CLAUSE?

(Res.Mem., Ex. 3).

The petition for writ of certiorari was denied by the South Carolina Supreme Court by order dated

July 3, 2007. (Res.Mem., Ex. 4).  The Remittitur was returned on July 19, 2007. (Res.Mem., Ex. 5).

3

### Grounds for Relief

**Ground One:**     Failure of trial counsel to file a timely direct appeal, following the Guilty Plea, violated Sixth Amendment right to effective assistance of counsel.

**Ground Two:**     Double Jeopardy in violation of U.S.C.A. #5.

**Ground Three:**   Ineffective Assistance of Counsel in violation of U.S.C.A. #6.

**Ground Four:**    Cruel and Unusual Punishment in violation of U.S.C.A. #8.

**Ground Five:**    Failure of any of the three (3) indictments to be filed.

**Ground Six:**     Guilty plea was not knowingly and/or voluntarily given but was entered due to extreme psychological factors including embarrassment.

**Ground Seven:**   The lower court lacked jurisdiction to proceed with "Count Three" of the indictment by failing to be specific as to the "place" of the offense.

**Ground Eight:**   Failure of Appel[l]ate Court to specifically address all of the issues fully from Writ of Certiorari to the Supreme Court of South Carolina.

### Discussion

#### A. Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

4

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review.  Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR.  Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt.  Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001).  If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court.  Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State

5

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."

28 U.S.C. § 2244(d)(2).  The statute of limitations is tolled for the entire period of the state post-

conviction process, "from initial filing to final disposition by the highest state court (whether decision

on the merits, denial of certiorari, or expiration of the period of time to seek further appellate

review)."  Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999).  Following the denial of relief in the state

courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United

States Supreme Court, nor the time a petition for certiorari is considered by the United States

Supreme Court, is tolled."  Crawley v. Catoe, 258 F.3d at 399.  A state collateral proceeding must

be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply.  "(A)n

application is 'properly filed' when its delivery and acceptance are in compliance with the applicable

laws and rules governing filings.  These usually prescribe, for example, the form of the document,

the time limits upon its delivery, the court and office in which it must be lodged, and the requisite

filing fee."  Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted).  "When a post-conviction

petition is untimely under state law, 'that [is] the end fo the matter' for purposes of §  2244(d)(2)."

Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R.

Civ. P. 6(a).  Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but

subject to the doctrine of equitable tolling.  Equitable tolling applies only in "those race instances

where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable

to enforce the limitation against the [petitioner]."  Harris, 209 F.3d at 330.  Under § 2244(d), the

State bears the burden of asserting the statute of limitations.  Petitioner then bears the burden of

establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling.  Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002).  To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing.  Pace, 544 U.S. at 418.  An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling.  Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.").  *See also* Harris, 209 F.3d at 331.

Because Ehrhardt did not file a direct appeal, his conviction became final on September 21, 2003.  Eighty-four (84) days of untolled time lapsed between that date and the filing of his PCR on December 15, 2003.  The statute of limitations was tolled until July 19, 2007 when the Remittitur was returned following denial of his petition for writ of certiorari.  According to the petition, Ehrhardt delivered it to the institutional mailroom for mailing on June 13, 2008.  Assuming June 13, 2008 to be the date of filing of the present petition, an additional three hundred twenty eight (328) days of untolled time lapsed.  Thus, a total of four hundred twelve (412) days of untolled time lapsed between the date Ehrhardt's conviction became final and the date he filed the present petition.

Ehrhardt has presented evidence that his PCR appellate attorney misadvised him as to the deadline for filing his habeas petition.  In a letter dated July 5, 2007, a copy of which is attached to Ehrhardt's Roseboro response, his attorney advised him that he had one year from the date of the order of the South Carolina Court of Appeals denying his petition for writ of certiorari to file his federal habeas corpus petition.  While the present petition was filed with a year of the order of the

7

Court of Appeals, it was not filed within one year of the date his conviction became final (minus the tolled period of time) as required by statute. Further, as discussed above, reliance on misadvice of his PCR appellate counsel does not entitled Ehrhardt to invoke the doctrine of equitable tolling.

**B. Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.    Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)    An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)    A State shall not be deemed to have waived the exhaustion

8

requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief ("PCR").  See S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application.  See, S. C. Code Ann. § 17-27-90.  A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal.  Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court.  If the PCR court fails to address a claim as is required by

9

S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007).   A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[3]  Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  See Rose v. Lundy, supra.

_____

[3]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances.  See discussion below on procedural bypass.

2.     **Procedural Bypass**[4]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and

---

[4]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

11

'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim.

12

Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996).  Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim.  In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule."  Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986).  A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials.  Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988).  A petitioner must show reasonable diligence in pursuing his claim to establish cause.  Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996).  Further, the claim of cause must itself be exhausted.  Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice.  Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000).  Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default.  O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997).  To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual

innocense.  Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual

innocense as to his guilt, Id., or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.     Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents.

Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and prejudice or

actual innocense.  If not raised by petitioner, the court need not consider the defaulted claim.

Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

After denial of the PCR, appellate counsel filed a Johnson petition for writ of certiorari[5] with

the South Carolina Supreme Court.  In Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988), the

South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes

that the PCR applicant has no meritorious grounds to present.  Counsel is required to file the Johnson

petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney

for the petitioner on appeal.  A copy of the brief is furnished to the applicant and he is notified that

he has a specific period of time to furnish further information to the Supreme Court for consideration

in making a determination as to the Johnson petition.  The applicant may file a pro se brief raising

additional issues.  Foster v. State, 298 S.C. 306, 379 S.E.2d 907 (1989).  In ruling on a Johnson

petition for writ of certiorari, the South Carolina Supreme Court necessarily considers the issue or

issues raised in the Johnson petition and any issues raised by the applicant in his pro se brief.

Further, the South Carolina Supreme Court conducts a review of the record when a Johnson petition

is filed.  King v. State, 308 S.C. 348, 417 S.E.2d 868 (1992).  In so doing, the South Carolina

---

[5]All appeals from the denial of a PCR application are made by seeking a writ of certiorari
from the South Carolina Supreme Court.  See SCACR 227.

Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented **and** were ruled on by the PCR court. The South Carolina Supreme Court applies a procedural bar to issues which do not meet this criteria. Under South Carolina law, the PCR court is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR. See S.C. Code Ann. § 17-27-80 and Rule 52(a) SCRCP. Bryson v. State, 328 S.C. 236, 493 S.E.2d 500 (1997). Counsel is required to object to any deficiencies in the order of the PCR court by making a motion to alter or amend the judgment pursuant to rule 59(e), SCRCP. McCullough v. State, 320 S.C. 270, 464 S.E.2d 340 (1995). If counsel fails to make such a motion, the South Carolina Supreme Court will apply a procedural bar to any issue not addressed in the order of the PCR court. Marlar v. State, 375 S.C. 407, 410, 653 S.E.2d 266, 267 (2007); Gambrell v. Bazzle, 2008 WL 269505, * 4-5 (D.S.C.).

Thus, when considering a Johnson petition, the South Carolina Supreme Court will only address the issues specifically ruled on by the PCR court which are raised in the Johnson petition and the *pro se* brief or petition submitted by the applicant. The Supreme Court will apply a procedural bar to all other issues.

Respondent appears to argue that none of Ehrhardt's claims contained in the Johnson petition or the *pro se* brief have been properly exhausted because they were not considered on their merits based on the holding of State v. Lyles, 381 S.C. 442, 673 S.E.2d 811 (2009). The undersigned disagrees.

In Lyles the South Carolina Supreme Court held that "as a matter of policy, we will not entertain petitions for writs of certiorari to the Court of Appeals where the Court of Appeals has conducted an Anders review." *Id.* at 443. In dicta discussing its policy rationale, the Supreme Court

15

noted that "a decision of the Court of Appeals after conducting a review pursuant to <u>Anders</u> is not a decision on the merits of the appeal, but simply reflects that the appellate court was unable to ascertain a non-frivolous issue which would require counsel to file a merits brief." *Id.* at 444-445. Respondent argues that by analogy since an <u>Anders</u> review is not a decision on the merits, a <u>Johnson</u> petition "does not involve consideration of the merits of any issue." (Res.Supp.Mem., p. 12). Respondent appears to assert that a petitioner cannot exhaust any claim for habeas purposes by way of an <u>Anders</u> brief on direct appeal or a <u>Johnson</u> petition for writ of certiorari following denial of a PCR.

As discussed above a habeas petitioner must exhaust his state court remedies before filing in this court. *See* 28 U.S.C. § 2254(b)(1)(a). Further, the habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings" unless the adjudication was "contrary to ... clearly established Federal law"... or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) and (2). This requirement, however, has never been held that a state appellate court must address an issue on the merits. Exhaustion is satisfied when the claim is presented to, and addressed by, the lower state courts and the prisoner seeks review by the state's appellate courts. Respondent cites no cases that have held that exhaustion cannot be satisfied by an <u>Anders</u> brief or a <u>Johnson</u> petition.

The undersigned includes an exhaustion analysis in connection with a discussion of Ehrhardt's claims.

### C. Standard of Review

Since Ehrhardt filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d),

as amended. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.), *cert.*

*denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525

U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Id</u>. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable." <u>Id</u>. at 1521.

17

**D. Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

### 1. Involuntary Guilty Plea (Ground 6)

As discussed above, the issue of involuntariness of a guilty plea merges into a claim of ineffective assistance of counsel at the PCR stage. Ehrhardt asserted in his PCR application that counsel failed to investigate and failed to inform him that he could receive the statutory maximum sentence on each count to run consecutively if he pled guilty. He further alleged that he "believed" a plea to a lesser sentence had been negotiated. (App. 60). The PCR court specifically addressed the issue and concluded that Ehrhardt's testimony on the issue was not credible. Based on the testimony of counsel and the record of the plea hearing, at which the court specifically advised Ehrhardt of the maximum penalty, the PCR court found that Ehrhardt had not shown that counsel was ineffective applying <u>Hill v. Lockhart</u>, *supra*. (App. 139-140).[6]

### 2. Direct Appeal (Ground 1)

The right to effective assistance of counsel extends to direct appeal. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 559 (1987). The <u>Strickland</u> standard is used to evaluate whether counsel was constitutionally deficient for failing to file a notice of appeal. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000) and <u>Frazier v. South Carolina</u>, 430 F.3d 696, 704-705 (4th Cir. 2005). "To establish a Sixth Amendment violation based upon counsel's failure to appeal, [the petitioner] must prove that (1) counsel was ineffective, and (20 a reasonable probability that, but for counsel's ineffectiveness, an appeal would have been filed." <u>United States v. Witherspoon</u>, 231 F.3d 923, 926 (4th Cir. 2000) (citing <u>Roe</u>, 528 U.S. at 477-83).

If counsel has consulted with the defendant, the failure to file an appeal is deficient only if

---

[6]As discussed above this claim was not raised in the <u>Johnson</u> petition or in Ehrhardt's *pro se* brief. Instead, Ehrhardt argued in his *pro se* brief that his plea was involuntary because it was based on this desire "to avoid extreme embarrassment." (App., Ex. 3).

it contradicts the defendant's instructions to appeal. <u>Roe</u>, 528 U.S. at 478. In the absence of a direct instruction from a defendant to appeal, the question of whether counsel's failure to appeal is constitutionally deficient depends upon "whether counsel in fact consulted with the defendant about an appeal." <u>Roe</u>, 528 U.S. at 478.

> If counsel fails to consult, the defendant may demonstrate prejudice by showing that a rational defendant would want to appeal. The defendant may do this by demonstrating either that (a) there were non-frivolous issues for appeal, or (b) he had adequately indicated his interest in appealing. The mere presence of non-frivolous issues to appeal is generally sufficient to satisfy the defendant's burden to show prejudice. Attempting to demonstrate prejudice based on a reasonably obvious interest in pursuing an appeal, however, necessitates an additional showing that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed counsel to file an appeal.

<u>Frazier v. South Carolina</u>, 430 F.3d at 708-709 (internal citations and quotation marks omitted).

The PCR court specifically found that trial counsel consulted with Ehrhardt about a direct appeal and that Ehrhardt did not request that an appeal be filed. The PCR court relied on <u>Roe v. Flores-Ortega</u>, *supra.*

### E. Double Jeopardy (Ground 2)

Ehrhardt pled guilty to three separate indictments, each charging him with Criminal Sexual Conduct with a Minor, Second Degree: 03-GS-42-2895 (App. 152); 03-GS-42-2749 (App. 156); and 03-GS-42-2748 (App. 159). Ehrhardt argues that he was subjected to double jeopardy because the indictments "are worded the same" and "two of them contain the same dates."

Under the Fifth Amendment of the United States Constitution, a person may not be "twice put in jeopardy of life or limb" for the same offense. In general terms, this language has been interpreted to bar prosecution in the following three situations:

    1.    Where a person would be tried for the same offense after an acquittal;

2.    Where a person would be tried for the same offense after a conviction; or

3.    Where a person would receive more than one punishment for the same offense.

See Benton v. Maryland, 395 U.S. 784 (1969) and North Carolina v. Pearce, 395 U.S. 711 (1969).

Ehrhardt appears to argue that his convictions violate the Fifth Amendment because, based on the wording of the indictments, they charged the same offense. The PCR court rejected this claim because the PCR testimony of counsel and the transcript of the PCR hearing established "three separate acts" of criminal sexual conduct by Ehrhardt on his son. (App. 140).[7]

Indictment No. 2748 alleged a sexual battery on a specific date, April 22, 2003.  At the plea hearing, the Solicitor described what happened on that date.  Ehrhardt acknowledged the truth of the facts related by the Solicitor.  The other two indictments alleged sexual batteries "between the dates of December 1, 2002 and January 31, 2003."  The Solicitor explained that during the time period alleged Ehrhardt committed a series of sexual batteries on his son, "as many as four times in a week." (App. 16).  Ehrhardt admitted that the acts took place, but denied that he coerced his son. (App. 18-19).

Based on the record, the PCR court found no double jeopardy had occurred. *See* Blockburger v. United States, 284 U.S. 299, 301 (no double jeopardy where similar but distinct separate acts take place at different times).

### F. Cruel and Unusual Punishment (Ground 4)

Ehrhardt asserts that his three consecutive twenty (20) year sentences constitute cruel and

---

[7]This claim addressed by the PCR court (App. 140) was contained in Ehrhardt's *pro se* brief. (Res.Mem., Ex. 3).  It is properly exhausted.

22

unusual punishment in violation of the Eighth Amendment.[8]  He appears to argue that his sentences are grossly disproportionate to his crimes.  *See* Solem v. Helm, 463 U.S. 277 (1983) and Harmelin v. Michigan, 501 U.S. 277 (1991).   Ehrhardt provides no basis upon which to consider a proportionality review, and he is not entitled to such.  *See* United States v. Francois, 889 F.2d 1341, 1343 (4th Cir. 1989), *cert. denied* 494 U.S. 1085 (1990) ("Solem does not require proportionality review of sentences that are less than life without parole").

### G. Procedural Irregularity (Ground 5)

Ehrhardt asserts that the trial court lacked jurisdiction because "(t)here is no evidence of any of the three (3) indictments having been filed...by way of clock/date filed stamp."[9]

The due process clause of the United States Constitution requires only that a defendant be given sufficient notice of the charges prior to trial.  Cole v. Arkansas, 333 U.S. 196 (1948).  It does not require a formal arraignment.  It is clear that the requirement of Grand Jury indictment contained in the Fifth Amendment to the United States Constitution does not apply to the states.  Wilson v. Lindler, 8 F.3d 173, 174 (4th Cir. 1993) (en banc), *cert. denied*, 510 U.S. 1131 (1994) and U.S. v. Floresca, 38 F.3d 706, 709 n.5 (4th Cir. 1994).  This rule allows states to prosecute felony cases by information as opposed to grand jury indictment.  Hurtado v. California, 110 U.S. 516, 538 (1884); Wilkerson v. Whitley, 28 F.3d 498, 502-3 (4th Cir. 1994) (en banc); and Minner v. Kerby, 30 F.3d 1311, 1317-18 (10th Cir. 1994).  Under South Carolina law, "(t)he indictment is a notice document."

---

[8]This claim was raised in his PCR application (App. 59), and addressed by the PCR court (App. 139).  However, it was not asserted in the Johnson petition or in Ehrhardt's *pro se* brief.  It is, therefore, procedurally barred.

[9]This claim was not raised in Ehrhardt's PCR application nor addressed by the PCR court.  It was raised as the first ground in Ehrhardt's *pro se* brief.  It is procedurally barred.

State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (S.C. 2005) (drawing a distinction between sufficiency of indictment and subject matter jurisdiction).

Thus, Ehrhardt presents only an issue of state law and procedure in this ground. There is no constitutional requirement that an indictment be stamped as filed by the Clerk of Court. "(F)ederal habeas relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764 (1990).

### H. Subject Matter Jurisdiction (Ground 7)

Ehrhardt asserts that the trial court lacked subject matter jurisdiction because the Solicitor, in providing the factual basis for one of the charges, failed to establish the place where the crime occurred. He points to the Solicitor's comments on page 16 of the plea transcript. (App. 16).[10]

The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article V, § 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with original jurisdiction in ...criminal cases"). Subject matter jurisdiction is the authority of a court to hear and determine cases of the general class to which the proceedings in question belong. Dove v. Gold Kist, Inc., 442 S.E.2d 598 (S.C. 1994) and State v. Gentry, 610 S.E.2d 494, 498 (S.C. 2005). The Circuit Court gains subject matter jurisdiction in a criminal case in one of three ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true bill of indictment." State v. Gonzales, 600 S.E.2d 122, 124 (Ct. App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental. A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time.

---

[10]This issue was not raised in the PCR application nor addressed by the PCR court. It was raised as the third ground in Ehrhardt's *pro se* brief. It is procedurally barred.

Further, the court may raise the issue *sua sponte*. Lack of subject matter jurisdiction may not be waived by the parties. Brown v. State, 540 S.E.2d 846 (S.C. 2001). The acts of a court which lacks subject matter jurisdiction are void. State v. Funderburk, 191 S.E.2d 250 (S.C. 1972).

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law. Thus, the frequently quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court." In other words, it is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists. This court does not review determinations of state law made by South Carolina courts. See Pulley v. Harris, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

As a matter of state law, an indictment is sufficient to establish jurisdiction if it informs the defendant of the county in which the offense is alleged to have occurred. Jones v. State, 333 S.C. 6, 507 S.E.2d 324 (1998). Even though a defendant has a right to be tired in the county in which the offense took place, the right is not based upon jurisdiction, but on venue. State v. Crocker, 366 S.C. 394, 621 S.E.2d 890 (Ct.App. 2005). A criminal defendant may be "entitled to a directed verdict when the State fails to present evidence that the offense was committed in the county alleged in the indictment." State v. Williams, 321 S.C. 327, 468 S.E.2d 626 (1996) (quoting State v. Evans, 307 S.C. 477, 415 S.E.2d 816 (1992).

In any event, the record does not support Ehrhardt's argument. In discussing one of the charges, the Solicitor commented that the State had difficulty determining the location of the offense which occurred in an automobile because the victim "talked of incidents being on vacation, on

25

camping trips." (App. 16).  But the Solicitor concluded that "we've determined that it [the incident] was by the mall here...or near a store called the Tangled Webb." *(Id.)*  The record as a whole shows the incidents charged all occurred in Spartanburg County.

### I.  Appellate Procedure (Ground 8)

Ehrhardt appears to allege that his right to due process was denied because the South Carolina Supreme Court did not fully discuss his claims, but instead rejected them by denial of his petition for writ of certiorari.[11]  There is no constitutional requirement that a state appellate fully analyze an applicant's claims in a collateral procedure.  The South Carolina Appellate Court Rules specifically provide for discretionary review of PCR cases by the South Carolina Supreme Court. *See* SCACR 227 and <u>Knight v. State</u>, 284 S.C. 138, 325 S.E. 2d 535 (1985).  This claim presents a question of state procedure only.

### <u>Conclusion</u>

Based on a review of the record, it is recommended that Petitioner's motions for default judgment be **denied** and Respondent's motion for summary judgment be **granted** and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

July 6,  2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

_____

[11]This claim has not been presented to the state courts.

26

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).